No. 21783.

GLENN PETER McCOY *v.* THE PEOPLE IN THE INTEREST OF A (MINOR) CHILD, UPON THE PETITION OF MARY KAY DeCRISTINO, NATURAL MOTHER OF SAID CHILD, BY DON G. DeCRISTINO, HER NEXT FRIEND.

(439 P.2d 347)

Decided April 15, 1968.

Francis R. Salazar, Carl L. Harthun, for plaintiff in error.

William F. Reynard, for defendants in error.

Virginia R. Robinson, amicus curiae.

*En Banc.*

Mr. Justice Kelley delivered the opinion of the Court.

On May 11, 1964, the petitioner below, Mary Kay DeCristino, initiated this contributing to dependency proceeding against the respondent, Glenn Peter McCoy, by filing a verified petition in the Denver Juvenile Court. It was alleged in the petition that McCoy was the father of Miss DeCristino's unborn dependent child; that McCoy had failed to properly support and care for the unborn child, and that McCoy was able to provide the proper support and care. McCoy moved to dismiss the petition on May 21, 1964, on two grounds: first, that proceedings for contributing to dependency under C.R.S. 1963, chapter 22, article 7, will not lie where the allegedly dependent child is yet unborn; and, secondly, that the petition improperly seeks medical care and support for the mother of the unborn child, rather than protection for the unborn child itself. The juvenile court denied this motion.

On April 22, 1965, the cause came on for trial before the juvenile court sitting with a jury. Petitioner's counsel moved at the outset of the proceeding for an amendment of the petition to show the birth of the infant in question, on the preceding October 13, 1964. This motion was granted over the respondent's objection, and the petition was appropriately amended. After trial to the jury, verdicts were returned wherein it was found that Glenn Peter McCoy was the child's father; that the child was dependent, and that Glenn Peter McCoy was contributing to the child's dependency. The juvenile court thereupon ordered McCoy to pay into the court registry the sum of $50 monthly for the support of the child, beginning with the month of June 1965. McCoy brings this writ of error to review the juvenile court's judgment.

Respondent McCoy contends that the motion to dismiss should have been granted, since the purpose of the contributing to dependency petition was allegedly to obtain assistance for Miss DeCristino, and not to secure

support for the unborn child. Proceedings to obtain support for the mother, it is urged, should be brought pursuant to the applicable provisions of C.R.S. 1963, 22-1-1 et seq. (Dependent and Neglected Children) and cannot be commingled with a contributing to dependency proceeding under chapter 22, article 7.

Miss DeCristino's petition reads, in pertinent part, as follows:

"That the said unborn child is a dependent child for the following reasons and causes, to wit: That it has not the proper parental care; and it is entitled to support and care by its parent, and * * * *Glenn Peter McCoy has failed to properly support or care for said unborn child* by failing to properly provide for the support of the mother of said unborn child, and by failing and refusing to provide medical attention and arrange for hospital care for the mother of said unborn child." (Emphasis added.)

The language of this petition should be construed so as to do substantial justice. R.C.P. Colo. 8(f). In our view, petitioner adequately alleges that her unborn child's welfare has been endangered because of her own personal deprivations, and that adequate care for the unborn child necessitated support money, medical treatment and hospitalization for the expectant mother. The petition is obviously intended to secure assistance for Miss DeCristino during the term of her pregnancy, in order that the health of the unborn child may be protected. The juvenile court obviously so construed the petition, since the court's final order directed McCoy to pay support solely for the infant and not for the petitioner.

*Geisler v. People,* 135 Colo. 121, 308 P.2d 1000, cited by the respondent, is readily distinguishable from the instant case. In *Geisler* the contributing to dependency petition which was filed subsequent to the birth of the child expressly demanded support for the dependent child's mother. The order of the court in *Geisler,* more-

over, granted monthly support to the mother and child jointly — a factor not present in this proceeding.

█ Respondent further urges that a contributing to dependency proceeding does not lie under chapter 22, article 7, where the allegedly dependent child has not yet been born. However, C.R.S. 1963, 22-1-1 (2) expressly provides that:

"The laws of this state concerning dependent or neglected children or persons who cause, encourage or contribute thereto, shall be construed to include all children under the age [of eighteen years] mentioned in this section from the time of their conception and during the months before birth."

We hold, under the above quoted section, that an action for contributing to dependency may be brought in the interest of any dependent child as defined therein. Such, in fact, has been the practice under Colorado law. See, *e.g., Woodside v. People,* 137 Colo. 485, 326 P.2d 980; *Cederquist v. Archuleta,* 127 Colo. 41, 253 P.2d 431; *Selk v. Ramsey,* 110 Colo. 223, 132 P.2d 454; *Davis v. People,* 103 Colo. 437, 86 P.2d 975.

In *Metzger v. People,* 98 Colo. 133, 137-38, 53 P.2d 1189, 1191, we rejected this same contention in these terms:

"No violence is done to the orderly process of the rational mind by letting the word 'child' include a human being immediately upon conception and during the period of pregnancy, as well as one actually born. * * * The physical and mental conditions surrounding the expectant mother are vital factors in the unfolding life of the child itself. Her lack of adequate nourishment and shelter, her bodily discomforts and hardships, the worries of mind usually accompanying the tragic situation which confronts us in such a case as this, are a proper basis for compelling the father of the unborn child to remove at least some of the disadvantages in these conditions. * * * ."

Respondent McCoy next contends that the jury's find-

ings that the child was a "dependent child" within the meaning of C.R.S. 1963, 22-7-1, is not supported by the evidence. The record shows that the mother of this child had been unemployed since the fourth month of her pregnancy and unable to find any work to support herself and her son. She was entirely dependent upon the private charity of her brother, with whom she lived during her pregnancy, and her father. Miss DeCristino's brother provided shelter and paid her hospital bill, but his own inadequate resources compelled Miss DeCristino to return with the infant to her parents' home in Trinidad, Colorado. Miss DeCristino's sole source of support at time of trial was her father, who earned approximately $200 per month. In addition he was supporting four other members of his family. Clothing for the child came largely from secondhand sources. The child received the best of food, medical care and clothing that can be afforded under these circumstances. At the trial, Miss DeCristino testified that she owed $350 in medical and hospital bills, and that she had not received any public welfare for the child or herself. No specific allowance was awarded to take care of these items.

The unfortunate situation of the child is clearly revealed by this record and substantiates the jury's finding of dependency. In this type of proceeding, the jury may properly consider the totality of circumstances surrounding the mother and child to determine whether the child's welfare has been impaired or threatened by the willful neglect of its natural father. *Dikeou v. People,* 95 Colo. 537, 38 P.2d 772. Certainly it cannot be said, as a matter of law, that the jury's verdict is entirely unsupported by the evidence presented in the proceedings below.

Respondent McCoy's reliance on *Nissen v. People,* 154 Colo. 19, 387 P.2d 897, and *Martinez v. Lopez,* 153 Colo. 425, 386 P.2d 595, is unavailing, since these authorities presented factual circumstances unlike those of the instant case. Miss DeCristino's unfortunate situation,

and that of her infant son, is therefore not controlled by the cited cases.

Both respondent and petitioner refer this court to the statutory definition of "dependent child" stated in C.R.S. 1963, 22-1-1(1) and insist that this section governs the meaning of dependency in proceedings under chapter 22, article 7. Although it has been held that all sections of chapter 22 must be read and construed together (*Geisler v. People,* 135 Colo. 121, 308 P.2d 1000), we cannot say that the definitional provisions in article 1 apply verbatim to contributing to dependency actions, for two reasons. First, C.R.S. 1963, 22-1-1(1) expressly limits the applicability of the definition stated therein to actions under article 1. Secondly, one purpose of article 1 is to permit the state to terminate the legal right of the parents to custody over their dependent child. C.R.S. 1963, 22-1-6(c); *Everett v. Barry,* 127 Colo. 34, 252 P.2d 826. In a proceeding of such gravity, the elaborate definition of dependency in C.R.S. 22-1-1(1) properly determines the outcome of the proceeding. We do not believe that this technical interpretation of dependency logically extends to the simplified procedures in contributing to dependency.

Respondent's remaining contentions pertaining to the issue of paternity may be summarily treated. The record contains ample testimony probative of Mc-Coy's paternity of the dependent child, and the jury's verdict on this issue is fully supported by the evidence. *Cederquist v. Archuleta, supra; Davis v. People, supra; Dikeou v. People, supra.* The trial court's instruction to the effect that petitioner must prove paternity by a preponderance of the evidence, rather than by clear and convincing evidence, correctly stated the law in this regard.

The judgment is affirmed.

MR. JUSTICE MCWILLIAMS not participating.